## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF NEW HAMPSHIRE

John S. Briand

v.                                       Civil No. 09-cv-003-SM

City of Berlin, et al.[1]

### REPORT AND RECOMMENDATION

Before the Court is a complaint (document no. 1) filed by
John Briand, an inmate at the Coos County House of Correction
("CCHC"). Briand brings this action pursuant to 42 U.S.C. §
1983, alleging that the defendants have violated his rights under
federal and state law. Because Briand is a prisoner proceeding
pro se and in forma pauperis, the matter is before me for
preliminary review to determine, among other things, whether the
complaint states any claim upon which relief may be granted. See
United States District Court District of New Hampshire Local Rule
("LR") 4.3(d)(2); 28 U.S.C. § 1915A(a).

---

[1]In addition to the City of Berlin, New Hampshire, Briand
names the Berlin Police Department ("BPD") and BPD Officers
Steven D. Arsenault and Timothy A. Godin as defendants to this
action.

## Standard of Review

Under this Court's local rules, when an incarcerated

plaintiff commences an action pro se and in forma pauperis, the

Magistrate Judge is directed to conduct a preliminary review.   LR

4.3(d)(2).   In conducting the preliminary review, the Court

construes pro se pleadings liberally, however inartfully pleaded.

See Erickson v. Pardus, 551 U.S. 89, ___, 127 S. Ct. 2197, 2200

(2007) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976) and

Haines v. Kerner, 404 U.S. 519, 520-21 (1972) to construe pro se

pleadings liberally in favor of the pro se party).   "The policy

behind affording pro se plaintiffs liberal interpretation is that

if they present sufficient facts, the court may intuit the

correct cause of action, even if it was imperfectly pled."   See

Castro v. United States, 540 U.S. 375, 381 (2003) (noting that

courts may construe pro se pleadings so as to avoid

inappropriately stringent rules and unnecessary dismissals of

claims); Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997).

All of the factual assertions made by a pro se plaintiff and

inferences reasonably drawn therefrom must be accepted as true.

See id.   This review ensures that pro se pleadings are given fair

and meaningful consideration.

## Background

At 11:50 p.m. on June 30, 2008, Berlin Police Department ("BPD") Officers Steven Arsenault and Timothy Godin went to Briand's home. The officers entered Briand's home without a warrant, and without Briand's permission. Once the officers were inside his home, Briand asked them what authority they were relying on to enter his home, and told them that he would speak to them in the hallway outside his apartment. Briand opened the door while "steering" the officers toward the door, to further indicate to the officers that they were not welcome inside his home. Briand states that, instead of leaving at that time, the officers moved further into his apartment, away from the open door.

Arsenault then grabbed Briand's right hand and twisted it, forcing his arm behind his back. Arsenault pushed Briand against the wall with enough force to knock pictures from the wall. At the same time, Godin had a Taser pointed at Briand, and threatened to shoot Briand with it if he failed to cooperate with the arrest. Arsenault handcuffed Briand and pulled him away from the wall.

Briand asked the officers why he was being arrested, and they told Briand that he was being placed into protective custody. Briand argued that he was in his home, and that therefore, there was no reason to place him into protective custody. The officers then "dragged" Briand out the door and down a flight of stairs, and placed him into a police cruiser. The officers did not lock Briand's home after they removed him.

Briand was transported to the BPD where he was placed into a cell at 12:08 a.m. on July 1. At 12:30 a.m. and 1:05 a.m., Briand attempted to get someone's attention but was unable to do so, so he took off his t-shirt and waved it at the security camera outside of the cell in order to summon an officer. At 2:30 a.m., Godin came to the cell block area and tried to take Briand's shirt from him. Briand refused to relinquish his shirt. Again, Godin threatened to shoot Briand with a Taser if he was not compliant. At that time, Arsenault arrived and entered the cell. Arsenault pushed Briand backward onto the cell bench. Briand tried to get up and Arsenault pushed him back again. Briand tried to grab Arsenault's arm in order to keep from falling into the cell wall. Arsenault then left the cell and

4

advised Briand that he would be charged with assault, presumably for grabbing Arsenault's arm.

On July 1, 2008 at 12:08 p.m., Briand was taken to the Berlin District Court where his bail was set at $1000 cash. Briand was then returned to the BPD cell block until he was transported to the CCHC, where he stayed until his bail was posted two days later.

Briand states that during the time he was away from home, his house was burglarized, and more than $10,000 worth of his personal property was taken. Upon discovering the theft, Briand went to the BPD to file a complaint. Briand was told that no officer was available to take his complaint. The BPD dispatcher told Briand that she doubted any officer would be willing to take his statement because he had no information about who was responsible for the theft. Briand alleges that Arsenault and Godin bear responsibility for the theft because they left his home unsecured when they arrested him and removed him from his home.

## Discussion

### I.  42 U.S.C. § 1983

A government official may be held personally liable under 42
U.S.C. § 1983 if, acting under color of state law, the official
caused the deprivation of a federal constitutional or statutory
right.  Kentucky v. Graham, 473 U.S. 159, 166 (1985).[2]  Briand
claims that the defendants were persons acting under color of
state law when they violated his constitutional rights.
Accordingly, his claims arise under § 1983.

### II.  Fourth Amendment Claim

Briand alleges that when Arsenault and Godin entered his
home without a warrant and without permission, and took him into
custody there, they violated his Fourth Amendment right not to be
subjected to a warrantless and unreasonable seizure of his person

---

[2]42 U.S.C. § 1983 states, in relevant part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any
> State or Territory or the District of Columbia,
> subjects, or causes to be subjected, any citizen of
> the United States or other person within the
> jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or
> other proper proceeding for redress. . . .

6

in his home.[3]  It is a "'basic principle of Fourth Amendment law
that searches and seizures inside a home without a warrant are
presumptively unreasonable.'  Nevertheless, because the ultimate
touchstone of the Fourth Amendment is 'reasonableness,' the
warrant requirement is subject to certain exceptions." Brigham
City v. Stuart, 547 U.S. 398, 403 (2006) (quoting Groh v.
Ramirez, 540 U.S. 551, 559 (2004)) (additional citations
omitted).  Exceptions to the prohibition on warrantless entry
exist to accommodate the presence of emergency or urgent
circumstances. See Brigham City, 547 U.S. at 403 (citing Mincey
v. Arizona, 437 U.S. 385, 392 (1978)).  Law enforcement officers
are permitted to enter a home without a warrant to either assist
in an emergency, or to protect someone in the home from imminent
injury. See Georgia v. Randolph, 547 U.S. 103, 118, 126 S. Ct.
1515, 1525 (2006) ("[I]t would be silly to suggest that the
police would commit a tort by entering . . . to determine whether

_____

[3]The Fourth Amendment provides:

> The right of the people to be secure in their
> persons, houses, papers, and effects, against
> unreasonable searches and seizures, shall not be
> violated, and no Warrants shall issue, but upon
> probable cause, supported by Oath or affirmation,
> and particularly describing the place to be
> searched, and the persons or things to be seized.

violence (or threat of violence) has just occurred or is about to
(or soon will) occur."); Mincey, 437 U.S. at 392. The Court must
apply an objective standard in reviewing an officer's warrantless
entry into a home for reasonableness. See Brigham City, 547 U.S.
at 404. Whether or not the officers' subjective intent in
entering the home was reasonable is irrelevant to the analysis of
a Fourth Amendment claim. See id. at 404-05.

New Hampshire law allows police officers who encounter a
person they believe to be incapacitated or intoxicated by alcohol
or drugs to take that person into protective custody. See N.H.
Rev. Stat. Ann. ("RSA") § 172:15(I)⁴; RSA § 172:1(XXVI) (defining

---

⁴RSA § 172:15 states in pertinent part as follows:

I.   When a peace officer encounters a person who, in the
     judgment of the officer, is intoxicated as defined in
     RSA 172:1, XXVII, the officer may take such person into
     protective custody and shall take whichever of the
     following actions is, in the judgment of the officer,
     the most appropriate to ensure the safety and welfare
     of the public, the individual, or both:

     . . .

     (c)  Lodge the person in a local jail or county
          correctional facility for said person's
          protection, for up to 24 hours or until the keeper
          of said jail or facility judges the person to be
          no longer intoxicated.

II.  When a peace officer encounters a person who, in the
     judgment of the officer, is incapacitated as defined in

"incapacitated" by drugs)[5]; RSA § 172:1(XXVII) (defining

---

> RSA 172:1, XXVI, the officer may take such person into
> protective custody and shall take whichever of the
> following actions is, in the judgment of the officer,
> the most appropriate to ensure the safety and welfare
> of the public, the individual, or both:
>
> . . .
>
> (b) Lodge the person in protective custody in a local
>     jail or county correctional facility for up to 24
>     hours, or until judged by the keeper of the
>     facility to be no longer incapacitated, or until a
>     designated drug counselor has arranged
>     transportation for the person to an approved drug
>     treatment program with detoxification capabilities
>     or to the emergency room of a licensed general
>     hospital.

. . .

VII. A taking into protective custody under this section is
     not an arrest, however nothing in this section shall be
     construed so as to prevent an officer or jailer from
     obtaining proper identification from a person taken
     into protective custody or from conducting a search of
     such person to reduce the likelihood of injury to the
     officer or jailer, the person taken into protective
     custody, or others.  No unnecessary or unreasonable
     force or means of restraint may be used in detaining
     any person taken into protective custody.

VIII. Peace officers or persons responsible for supervision
      in a local jail or designated drug counselors who act
      under the authority of this section are acting in the
      course of their official duty and are not criminally or
      civilly liable therefor, unless for gross negligence or
      willful or wanton injury.

[5]RSA § 172:1(XXVI) states:

"Incapacitated" means that a person as a result of his or

9

"intoxicated" by drugs)[6]; RSA § 172:1(XXVIII) (defining

"Protective Custody")[7]; RSA § 172-B:1(IX) (defining

"incapacitated" by alcohol)[8]; RSA § 172-B:1(X) (defining

---

her use of drugs is in a state of intoxication, or mental
confusion resulting from withdrawal, such that:

(a)  He or she appears to need medical care or supervision
     by approved drug treatment personnel to assure his or
     her safety; or

(b)  He or she appears to present a direct active or passive
     threat to the safety of others.

[6]RSA § 172:1(XXVII) states: "'Intoxicated' means a condition
in which the mental or physical functioning of an individual is
substantially impaired as a result of the presence of drugs in
his or her system."

[7]RSA § 172:1(XXVIII) states:

"Protective custody" means a civil status in which an
incapacitated person is detained by a peace officer for the
purposes of:

(a)  Assuring the safety of the individual or the public or
     both; and

(b)  Assisting the individual to return to a functional
     condition.

[8]RSA § 172-B:1(IX) states:

Incapacitated" means that a person as a result of his use
of alcohol is in a state of intoxication, or mental
confusion resulting from withdrawal, such that:

(a)  He appears to need medical care or supervision by
     approved alcohol treatment personnel . . . to assure
     his safety; or

10

"intoxicated" by alcohol)[9].  The determination of whether or not
an incapacitated or intoxicated individual should be placed into
protective custody, and what course of action should be taken
with respect to that individual once placed in custody, is left,
by statute, to the judgment of the detaining officer.  See RSA §
172:15(II).

     Here, Briand concedes that the officers entered his house to
take him into protective custody.  Briand, in the complaint, does
not take issue with the officers' presence at the front door of
his house to investigate the protective custody issue.  In
objecting to his arrest for protective custody, Briand raises
only an objection to being placed into protective custody inside
his home which, he asserts renders any protective custody arrest
unreasonable.  Briand does not raise a general objection to being
placed into protective custody at all.  Briand does not allege
that he was taken into protective custody for an improper

_____

        (b)  He appears to present a direct active or passive threat
             to the safety of others.

     [9]RSA § 172-B:1(X) states: "'Intoxicated' means a condition
in which the mental or physical functioning of an individual is
substantially impaired as a result of the presence of alcohol in
his system."

11

purpose, or that he was not intoxicated or incapacitated by drugs or alcohol.

The facts in the complaint, even liberally construed in Briand's favor, most reasonably support the conclusion that Arsenault and Godin arrived at Briand's home to investigate whether or not Briand was so incapacitated or intoxicated that he should be placed into protective custody. The officers were investigating Briand's well-being and safety, and did not, therefore, need a warrant to enter his home. Once the officers were properly inside, the seizure of Briand's person pursuant to a reasonable judgment that he was in need of protective custody did not violate the Fourth Amendment. The fact that Briand was in his own home does not automatically remove the need for a protective custody arrest, as New Hampshire law leaves it to the judgment of the detaining officers to determine the most appropriate course of action in a particular case. Accordingly, I find that the facts alleged in the complaint do not support a finding that the officers' entry into Briand's home, and subsequent seizure of his person, were unreasonable. Briand has not alleged sufficient facts, therefore, to state a claim for a

12

violation of the Fourth Amendment. Accordingly, I recommend that
this claim be dismissed from this action.

III. Excessive Force Claim

Briand asserts that by twisting his arm and slamming him
into the wall in order to handcuff and arrest him, and by
pointing a Taser at him, Arsenault and Godin used excessive
force. Claims alleging the use of excessive force in effecting
an arrest are governed by the Fourth Amendment's prohibition
against "unreasonable" seizures. See Graham v. Connor, 490 U.S.
386, 394-95 (1989). In order to prevail on a claim alleging
excessive force in handcuffing a subject, "a plaintiff must
establish that the defendant's actions in handcuffing [him] were
objectively unreasonable in light of the circumstances and the
facts known to the officer at the time." Calvi v. Knox County,
470 F.3d 422, 428 (1st Cir. 2006) (citing Graham, 490 U.S. at
396-97). A court reviewing such a claim must consider both the
attendant facts and circumstances surrounding the arrest, and
that "[p]olice work is often carried out in fast-moving and
poorly defined situations." Id.; see Lockhart-Bembery v. Sauro,
498 F.3d 69, 75 (determination of reasonableness under Fourth
Amendment "does not depend on any particular factor; the court

13

must take into account the various facts of the case at hand.").
Here, the officers were faced with a suspect that they believed
needed to be placed in protective custody and could not be safely
kept at home.  Briand states that, rather than immediately
submitting to the officers' authority, he was less than welcoming
to the officers and that, while they were in his home, he was
"steering" them out the door.  Briand does not allege that he
suffered any physical injury, or even experienced any significant
pain during his arrest, although he claims to have suffered
mental anguish.  Further, while he may have been intimidated by
having a Taser pointed at him, Briand does not allege that the
Taser was used.  Accordingly, I cannot find that the facts
asserted in the complaint suffice to allege that the arrest
methods used here employed unreasonable or excessive force in
violation of the Fourth Amendment, and I recommend that this
claim be dismissed.

IV.  Denial of Criminal Prosecution Claim

Briand claims that the BPD violated his rights by failing to
take his complaint or to initiate any criminal prosecution
regarding the theft of property from his home.  There is no cause
of action under § 1983, however, for the failure to prosecute a

14

crime, as there is no federal constitutional right to have criminal wrongdoers brought to justice. See Leeke v. Timmerman, 454 U.S. 83, 87 (1982); Nieves-Ramos v. Gonzalez-De-Rodriquez, 737 F. Supp. 727, 728 (D.P.R. 1990) (citing Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973) ("a private citizen lacks a judicially cognizable interest in the prosecution or non prosecution of another.")).  I therefore recommend that Briand's claim against the BPD for failing to prosecute the theft of property from his home be dismissed.

## V.   Property Loss Claim

Briand claims that Arsenault, Godin, and the BPD are liable to him for the property he lost as a result of the officers' failure to secure his home after taking him into custody. Briand's claim that the officers' failure to lock his door resulted in a loss of his property, amounts, at most, to a state law tort claim.  Briand's claim, however, does not allege a federal constitutional violation, and is therefore not actionable under § 1983.  Accordingly, I recommend that Briand's property loss claim be dismissed.

## VI. Effective Assistance of Counsel Claim

Briand complains that he had a Sixth Amendment right to be provided with counsel immediately upon his request for an attorney.  Briand states that he made several requests for an attorney on June 30 and July 1, both at the BPD and at the BDC, but that he was not immediately given access to a lawyer.  Briand does not allege that he was denied an attorney after July 1, 2008.

"The Sixth Amendment right of the 'accused' to assistance of counsel in 'all criminal prosecutions' is limited by its terms: 'it does not attach until a prosecution is commenced.'"  Rothgery v. Gillespie County, ___ U.S. ___, 128 S. Ct. 2578, 2584 (2008) (quoting McNeil v. Wisconsin, 501 U.S. 171, 175 (1991)); see United States v. Boskic, 545 F.3d 69, 81 (1st Cir. 2008) (discussing with approval the Rothgery Court's findings regarding when an accused's right to counsel is triggered).  For purposes of determining when the right to counsel attaches, a criminal prosecution commences at "the initiation of adversary judicial criminal proceedings - whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." Rothgery, 128 S. Ct. at 2584 (internal citations omitted).  To

16

allege that he has been denied the timely appointment of counsel, therefore, an accused person must assert that at "'the point at which the government has committed itself to prosecute,' . . . and the accused 'finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law,'" he was not provided counsel "within a reasonable time once a request for assistance" was made.  Rothgery, 128 at 2584 (quoting Kirby v. Illinois, 406 U.S. 682, 689 (1972)).

     Here, Briand states that he requested counsel on the night of his arrest, and then again, the following day, both at the BPD and then, at his arraignment at the BDC.  Briand objects to the fact that he was not immediately provided with an attorney upon his request.  Briand does not claim that the BDC denied his request for court-appointed counsel to represent him in his criminal case, or that counsel was not appointed within a reasonable time after that request was made.  Neither the BPD nor the BDC had an obligation to have counsel present at the police station where he was detained in protective custody, or upon his arrival at the BDC to be arraigned on a new charge of assault. Accordingly, I find that Briand has failed to state facts

17

supporting a claim for a violation of the Sixth Amendment right

to counsel and I recommend that this claim be dismissed.

## VII. Municipal Liability

Under 42 U.S.C. § 1983, a municipality may be liable for

damages to a plaintiff "who is subjected to a deprivation of his

constitutional rights as a result of official action taken

pursuant to a 'custom or usage' of the municipality." Mahan v.

Plymouth County House of Corrs., 64 F.3d 14, 16 (1st Cir. 1995)

(citing Monell v. N.Y. City Dep't of Soc. Servs., 436 U.S. 658,

691 (1978)). Although in some instances a single incident of

constitutional deprivation may provide "some proof" of a

municipal policy, "a single incident is insufficient, in and of

itself, to establish a municipal 'custom or usage.'" Mahan, 64

F.3d at 16; see also City of Oklahoma City v. Tuttle, 471 U.S.

808, 823 (1985) (proof of single incident by lower level

employees does not establish official policy or custom). In this

instance, where Briand has only alleged a single incident of

police overreaching, and I have already found that Briand's

allegations do not state constitutional violations by the

officers during that incident, I find that Briand has failed to

allege any widespread policy, custom or practice sufficient to

allege that either the City of Berlin or the BPD has violated
Briand's constitutional rights, and I recommend that any such
claim be dismissed.

VIII.State Law Claims

In addition to his federal claims, Briand has alleged that
the actions of the defendants violated his rights under state
law. Where, as here, there is no diversity of the parties, this
Court can obtain jurisdiction over plaintiffs' state law claims
only by exercising its supplemental or pendent jurisdiction over
the state claims where the claim is part of the same case or
controversy as a federal question claim properly before this
Court. See 28 U.S.C. § 1367(a) (allowing court to exercise
supplemental jurisdiction over state law claims that are "so
related to the claims in the action within the original
jurisdiction that they form part of the same case or
controversy); see also United Mine Workers v. Gibbs, 383 U.S.
715, 725 (1966). Plaintiff's state law claim arises out of the
same facts and circumstances as his asserted federal claims;
however, because I have recommended dismissal of the federal
claims, I recommend that this Court decline to exercise
jurisdiction over the state law claims, and that they be

19

dismissed without prejudice to filing in a state court of
competent jurisdiction.

## Conclusion

As I find that plaintiff has failed to state any claim upon
which relief might be granted, I recommend dismissal of this
action in its entirety. Any objections to this report and
recommendation must be filed within ten (10) days of receipt of
this notice.  Failure to file objections within the specified
time waives the right to appeal the district court's order.  See
Unauthorized Practice of Law Comm. v. Gordon, 979 F.2d 11, 13-14
(1st Cir. 1992); United States v. Valencia-Copete, 792 F.2d 4, 6
(1st Cir. 1986).

Justo Arenas
United States Magistrate Judge

Date:      April / , 2009
cc:        John S. Briand, pro se

20